# Moore, *et al. v.* Warrior Coal & Land Co.

*Bill for an Accounting and for Cancellation of Certificates of Stock.*

(Decided June 11, 1912.   59 South. 219.)

1. *Corporation; Promoters; Liability.*—The relation of the promoter of a corporation to the company and its stock holders is of a fiduciary character calling for the utmost good faith, and the promoter will not be permitted to take secret profits in the form of stock or otherwise.

2. *Same.*—Failure of the promoter of a corporation to disclose his interest antagonistic to that of the corporation, is a fraud.

3. *Same.*—A bill may be maintained by a corporation against a promoter for an accounting for secret profits derived by him, without rescinding or setting aside the transaction, or by the stockholders where, on account of the promoter being in control, redress cannot be had through the corporation.

4. *Same.*—Where the scheme proposed by the promoter of a corporation to the prospective stockholders, was to organize a corporation, issue shares of stock for money paid in at par, and with this money acquire small tracts of coal land, and hold them as one tract, thus increasing their value, a bill to require the promoter to account for his fraud for failure to carry out the scheme, is not wanting in equity, although the land conveyed to the corporation was sold to it at a fair price and was worth the par value of the capital stock as the shareholders were entitled to have the scheme carried out, especially when the bill seeks the cancellation of shares of stock fraudulently issued, and an accounting of money fraudulently misappropriated.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Warrior Coal & Land Company, against Walter Moore and others, for an accounting, and for the cancellation of certain shares of stock, alleged to have been fraudulently issued.   Decree overruling demurrer to the bill, and respondent appeals.   Affirmed.

L. J. HALEY and CARMICHAEL & WINN, for appellant. Counsel discuss two propositions, the first being that

the bill wrongfully construes the contract, and second, that the bill shows on its face that if there was cause of action against Moore, it exists in favor of Cavanaugh and his associates, and not in favor of the corporation. They cite no authority in support of their contentions.

EDMUND H. DRYER, for appellee.  Promoters of a corporation occupied a fiduciary relation to each other and to all others who may subsequently become members or subscribers. They cannot take secret profit, must disclose all interest antagonistic to the corporation, and it is not necessary to rescind or set aside a transaction in order to authorize the corporation or the stockholders to ask for an accounting, and to have shares of stock fraudulently issued cancelled.—10 Cyc. pp. 274-280, and cases cited in notes; Thomp. on Cor. 1, §§ 456-458; *Dickerman v. Northern Trust Co.*, 176 U. S. pp. 203-4; *Yeiser v. U. S. Board & Paper Co.*, 107 Fed. 340; *Chandler v. Bacon*, 30 Fed. 538; *Lomita Land & Water Co. v. Robinson*, 154 Cal. 36; *Burbank v. Dennis*, 101 Cal. 90; *Mason v. Carrothers*, 105 Maine 392; *Camden Land Company v. Lewis*, 101 Maine 78; *Brewster v. Hatch*, 122 N. Y. 349; *Hayward v. Leeson*, 176 Mass. 310; *Caffee v. Berkley*, 141 Iowa 344; *Hinkley v. Sac. Oil & Pipe Line Co.*, 132 Iowa 396; *Telegraph v. Soetscher* 127 Iowa 383; *Plaquemmes Tropical Fruit Co. v. Buck*, 52 N. J. Eq. 219; *Woodbury Heights Land Co. v. Loudenslager*, 55 N. J. Eq. 78; S. C. 58 N. J. Eq. 556; *Yale Gas Stove Co. v. Wilcox*, 64 Conn. 101; *Fred Macey Co. v. Macey*, 143 Mich. 138; *Exter v. Sawyer*, 146 Mo. 302; *So. Joplin Land Co. v. Case*, 104 Mo. 572; *Pietsch v. Milbrath*, 123 Wis. 647; *Hebgen v. Koeffler*, 97 Wis. 313; *Franey v. Warner*, 96 Wis. 222; *Wills v. Nehalem Coal Co.*, 52 Or. 70; *Johnson v. Sheridan Lumber, Co.*, 51 Or. 35; *Jordan v. Annex Corporation*,

109 Va. 625; *Manegold v. Adrian Irrigation Co.*, 60 Wash. 286; *Erlanger v. New Sombrero Phosphate Co.*, L. R. 3 App. Cases 1218.

DOWDELL, C. J.—The Warrior Coal & Land Company, a corporation organized under the laws of this state, files this bill against its promoter, Walter Moore, and his alleged guilty confederates, and the bill also makes all of the stockholders of the complainant parties respondent. The bill charges infidelity and fraud in the organization of the corporation by the promoter, both prior and subsequent to the issuance of its charter, and seeks to have an accounting by the promoter, and prays also the cancellation of the certificates of stock in said corporation illegally issued to the promoter. The bill is lengthy, setting out in detail the facts relating to the organization of the complainant corporation, the purposes of its creation, and the wrongs and frauds perpetrated by its promoter, Walter Moore, and his aiders.

The case as made by the bill is fairly summarized in brief of counsel for appellee as follows: Walter Moore, as a promoter, induced J. B. Cavanaugh and others to go into the scheme of forming a corporation, the Warrior Coal & Land Company, complainant in this bill, upon the basis of all, including himself and his associates, paying for stock at par, the money to be used for buying coal lands through him, the said Moore; such lands to be turned in to the company at cost and paid for with money derived from such issuance of stock. Moore was to organize the company, handle the money, do the buying, and, in fact, do everything. He was intrusted with, and exercised, such management and control from the time of the formation of the project, before the company was actually formed, until several

years after it was organized. The bill specifically and in detail sets out a series of concealments, frauds, and misrepresentations practiced by said Moore, running down to a short while before the filing of the bill, practiced by him to such effect that the innocent stockholders holding original issues had contributed for such stock at par $116,000, of which only about $90,000 has been so expended by him; that he and his guilty associates owed the company on that account alone $26,000, besides $29,000 for stock issued without consideration to Moore and sold to innocent holders; and that there was left outstanding, in the names of Moore and his associates in the fraud, $73,500 at par of stock for which nothing was paid. C. S. Simmons, one of the respondents, was used by the said Moore as the company's trustee for conduit of title from the vendors to the company. Only money so paid into the company was used in the purchase of the lands. Simmons, as trustee, deeded some lands to the company, of which he furnished no muniments or evidence of title in himself. The bill asks for such deeds and muniments of title. Simmons also furnished deeds to himself as such trustee to lands he has not conveyed to the company; the titles to which are by the bill sought to be divested out of him and vested in the company. Moore for a long time evaded making any statement of receipts and expenditures; and, when pressed, made a general one which is charged to be false, and he still fails and refuses to make any other statement, claiming that no books were kept. The bill asks for an accounting from him. On July 10, 1906, when Cavanaugh and his associates consented to go into the enterprise, he paid Moore, in order to enable him to proceed to negotiate for and purchase the lands for the company then to be organized, the sum of $27,000, and on July 23, 1906, $20,000 additional;

Moore falsely representing that he (Moore) had advanced $30,000 and that more money was needed for instant purchase to keep others, then attempting to buy, from buying.

Moore and his confederates organized the company on August 17, 1906, and soon thereafter said Cavanaugh, for his associates, resumed sending, and continued to send in money until he had sent Moore, for the company, $107,500 for which stock at par, as agreed, was issued. Moore represented during the negotiation, and before the company was formed, that he and his associates had arranged to pay in for stock at par, under such understanding with Cavanaugh, approximately $80,000, which was false. Moore, as president of the company, and Simmons, as secretary, issued shares to dummies, in whose names original certificates of shares were made out, later canceling the same and reissuing them to Moore. In the form of the declaration for organization Moore, Steve Smith, and C. S. Simmons, trustee, represented that Moore had subscribed in money, for 200 shares, $20,000; Steve Smith, for 50 shares, $5.000; C. S. Simmons, individually for 50 shares, $5,000; and C. S. Simmons, trustee, for 2,200 shares, payable in money with a contract to convey lands (not described), all of which statements were false. Moore had paid in nothing for himself, but had then already been furnished by Cavanaugh, for himself and associates, $47,500. Steve Smith had paid in nothing, and Simmons had paid in nothing. The lands had not been acquired from the original owners, or, if any, only a small part, and payment had been made out of the $47,500 furnished by Cavanaugh and his associates. No shares were ever issued to Simmons, trustee, and his subscription as trustee for the 2,200 shares,

if he ever so subscribed, was merely for the purpose of perfecting the organization.

The general plan of the enterprise, as shown by the bill, was (1) that all participants were to pay money for stock at par, Moore and Cavanaugh, through themselves and associates, to contribute approximately the same amounts in the aggregate, for the purpose of (2) buying coal in places in lands at cost, which could, in small tracts, be purchased cheaply, but, when bodied up into one corporate ownership, would be worth very much more, thus making the value of the shares higher than par, to the equal advantage and benefit of all, according to the respective sums of money paid for stock. The general purpose and end of the bill is to preserve in its integrity the object of the enterprise.

Moore and Simmons each interposed the general demurrer which tests the equity of the bill as to him. These demurrers were overruled by the chancellor, and the present appeal is prosecuted from the decree overruling the demurrers. And the only question now presented for our consideration is whether or not the bill contains equity.

Moore was a promoter of the complainant corporation, and his relation as such to the corporation, as well as to those whom he might induce to put their money into the project and become stockholders, was of a fiduciary character, calling for the utmost good faith and fair dealings. In Thompson on Corporations (volume 1, § 457), the law is thus stated: "Promoters of a corporation occupy a fiduciary relation to it and have no right to derive any advantage over other stockholders without a full and fair disclosure of the transaction, and any secret profits which they may acquire through promoting the corporation must be refunded, and may be recovered in equity by the corporation or

its legal representative, and in many cases at law. * * * The principle upon which courts of equity proceed in these cases is a very familiar one. The promoter of a company, like its directors, is deemed to sustain towards the members of the company the relation of a trustee towards his cestui que trust. This being so, he will not be permitted to speculate out of that relation, or to derive secret advantages from it. He is bound to disclose to them fully all material facts touching his relation to them," etc. To the same effect the law is stated in 10 Cyc. pp. 274-280.

In *Dickerman v. Northern Trust Company,* 176 U. S. 203, 204, 20 Sup. Ct. 311, 319 (44 L. Ed. 423), it is said: "A promoter is one who 'brings together the persons who become interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the formation of the corporation itself' [citing Cook on Stocks and Stockholders, § 651]. * * * He is treated as standing in a confidential relation to the proposed company, and is bound to the exercise of the utmost good faith [citing Lloyd, Corporate Liability, 18, and other authorities]. The promoter is the agent of the corporation and subject to the disabilities of the ordinary agent. His acts are scrutinized carefully, and he is precluded from taking a secret advantage of the other stockholders. * * * If the promoters are guilty of any misrepresentation of facts or suppression of the truth in relation to the character and value of the property or their personal interest in the proposed sale, the company will be entitled to set aside the transaction or recover compensation for any loss it has suffered." For other citation of authorities to the same effect, we refer to brief of counsel for appellee.

[Moore, et al. v. Warrior Coal & Land Co.]

From the above-cited authorities and others cited in brief of counsel for appellee, the following principles of law may be deduced in respect to the relations promoters occupy to the corporation and to those whom they induce to enter into the enterprise and become stockholders, as well as towards each other, and the duties they owe to the company and the stockholders. Their relation is of a fiduciary character, calling for the utmost good faith, and they will not be permitted to take secret profits in the form of stock or otherwise. Where their interests are antagonistic, they cannot be silent; they must disclose. A failure to inform is a fraud. Their position is, in a sense, that of a trustee, and they may be held to an accounting for any breach of the trust. The corporation is a proper party in such cases to file the bill and to obtain relief; it is not necessary to rescind or set aside the transaction. The bill may, however, be maintained by the injured shareholders, where redress cannot be had through the corporation, because of being under control of the perpetrators of the wrong.

Applying the principles of law as stated to the facts charged in the bill, which are to be taken as true on demurrer, we think there can be no doubt as to the equity of the bill. The project proposed by the promoters was to organize a corporation and issue shares of stock, for money paid in, at par value, and with this money to purchase coal in place in lands in small tracts and body the same up into one tract, and by so doing increase the value of the holding, and, as a result, give a greater value to the shares of stock issued for the money so paid in. Such was the inducement held out by the promoters, and those paying in their money have an equity in preserving and carrying out the project, and to this

end to call to an accounting the unfaithful promoters who, by their fraud, have thwarted the project.

It is no answer to this theory of the bill to say that the lands conveyed to the corporation and now held by it were sold to it at a fair price and are equal in value to the par value of the total capital stock of the corporation. Those who were induced to pay in money for stock upon the representations made by the promoters were entitled to have the lands at cost and to be purchased under the proposed scheme.

It is contended by counsel for appellant that the written agreement between the promoters, Moore and Cavanaugh, attached as an exhibit to the bill, for the formation of the company shows on its face that subscriptions to the capital stock of the corporation might be made in lands. We do not so construe the agreement, and, if susceptible of such construction, on the facts stated in the bill it was not so construed by Moore and Cavanaugh, but, on the contrary, they treated it as requiring the stock to be subscribed and paid for in money.

The bill, moreover, seeks the cancellation of shares of stock charged to have been fraudulently issued, and also to have an accounting for money charged to have been fraudulently used or misappropriated by Moore and his confederates. Taking the statements of the bill as true, and which we must do on the general demurrer for want of equity, interposed by the respondents Moore and Simmons, we have no doubt that the bill contains equity, and hold consequently that there was no error in overruling the demurrer. The decree will be affirmed.

Affirmed. All the Justices concur.